## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

STEPHEN FARINA,

    *Plaintiff,*

 v.            Civil Action No. 21-2593 (TJK)

DALE SANDERS,

     *Defendant.*

## <u>MEMORANDUM OPINION</u>

   This case is an episode in a long-running row between Plaintiff and Defendant, Plaintiff's former lawyer.  Having repeatedly failed to vindicate his belief that Defendant owes him money under their representation agreement, Plaintiff now sues alleging torts arising mostly from their first legal clash.  Because he has not stated claims, the Court will enter judgment on the pleadings for Defendant.

**I. Background**

  **A. Factual Background**

   Plaintiff retained Defendant to represent him in a case brought in D.C. Superior Court. ECF No. 1 ("Compl.") at 4.[1]  Their arrangement provided for a contingent fee plus an hourly fee. *See* Compl. at 4–5 & n.1.  Plaintiff's case settled in 2013 without the award of any damages, and the same day, Defendant charged Plaintiff's credit card for his services.  Compl. at 6.  Defendant

---

[1] This case is at the pleading stage, so the Court draws most of the facts below from Plaintiff's complaint and assumes they are true.  But Plaintiff represents himself pro se, so the Court construes his allegations liberally and looks outside the complaint where necessary.

also announced that he would keep Plaintiff's retainer.  Compl. at 6–7.  Plaintiff disputed those charges, and so requested arbitration before a D.C. lawyer-client arbitration board.  *See* Compl. at 43.  Defendant then sued Plaintiff in Virginia state court.  *See* Compl. at 8.

Plaintiff, though, believed Defendant was bound by D.C. attorney-ethics rules to arbitrate their dispute.  *See* Compl. at 8.  He told Defendant so, and suggested that the two proceed to arbitration instead.  *See* ECF No. 15-1 at 4–5.  Defendant refused, claiming that any arbitration would require his consent—and that he would not agree.  *Id.* at 5.  Plaintiff replied with more information, and Defendant conceded that he did not "know anything" about the D.C. arbitration program, "having never used it before." *Id.* at 6.  But Defendant claimed that was irrelevant because arbitration would require the state court to stay its proceedings, which he said would "not happen." *Id.*[2]  Those opening salvos kicked off years of multi-forum litigation.  *See generally* Compl. at 10–16.[3]

Plaintiff responded partly by suing Defendant in D.C. Superior Court for legal malpractice. Compl. at  43.  That court held that Defendant was bound to arbitrate the dispute being heard by the Virginia court, but that it lacked jurisdiction to order further relief while the Virginia suit was pending.  *See* Compl. at 51.  Eventually, the Virginia court agreed, and the dispute proceeded to arbitration.  ECF No. 12 at 34 n.22.  But the Virginia court ultimately dismissed Defendant's

---

[2] In his complaint, Plaintiff portrays these events differently.  He says, for instance, that Defendant "informed [him] that the primary reason [Defendant] filed [in state court] . . . was to evade the arbitration."  Compl. at 8.  The Court relies on the emails themselves to establish these facts because Plaintiff attached them as exhibits and incorporated them by reference in the complaint.  *See Battle v. Master Sec. Co.*, 298 F. Supp. 3d 250, 252 (D.D.C. 2018).

[3] The Court's description greatly simplifies the litigation history between Plaintiff and Defendant. *See generally, e.g.*, Compl. at 42–44; ECF No. 12 at 2–8.  It contains only the facts necessary to understand Plaintiff's claims.

claims with prejudice.  Compl. at 39–40.  Thus, the D.C. Court of Appeals concluded that the

arbitration was moot.  ECF No. 12 at 5 n.3.

Towards the end of those battles, Defendant's law firm received an unfavorable internet

review.  A user named "Alan R.," whose avatar resembled the notorious murderer Charles Manson,

called Defendant "sleazy" and advised potential clients to "[r]un away!"  Compl. at 111.  The

review suggested that Defendant was incompetent and malicious.  *Id.*  Defendant responded to the

posting online by explaining that he had "never represented an Alan R. or Charles Manson."  *Id.*

at 112.  He charged that Plaintiff, whom he called an "obsessed former client," had posted the

review under a false name and image.  *Id.*  He said Plaintiff had "posted many negative reviews"

about him and "sued him unsuccessfully 6–10 times."  *Id.*  But he took no issue with the chosen

avatar—he stated that "Charles Manson is a perfect capture of [Plaintiff's] psyche."  *Id.*

### B.    Procedural History

Plaintiff sued Defendant in this Court both for filing the Virginia state-court case and for

attributing the bad review to him.  *See* Comp. at 21–27.  Defendant first moved to dismiss for lack

of jurisdiction, contending that Plaintiff had inadequately alleged diversity of citizenship and an

amount in controversy.  *See* ECF No. 8.  The Court ordered Plaintiff to show cause why the case

should not be dismissed for failure to allege complete diversity.  Min. Order of Apr. 19, 2022.

Plaintiff responded by moving to amend his complaint to allege the citizenship of the parties.  ECF

No. 22.  The Court then concluded that Plaintiff had adequately pleaded a controversy over which

it has subject-matter jurisdiction.  Min. Order of Apr. 21, 2022.

Meanwhile, Defendant moved to dismiss again, claiming that the applicable statute of lim-

itations had expired.  ECF No. 23.  Although Defendant is a lawyer, he was not then admitted to

practice before this Court.  *See* CM/ECF Notice of Apr. 22, 2022.  So when he filed that motion,

the Clerk of Court notified him that he was not in good standing to file on behalf of a client.  *Id.*

Plaintiff understood that notice to mean that Defendant's motion had been "rejected," so he moved for a clerk's entry of default.  *See* ECF No. 25 at 2.

Defendant next moved to amend his pending motion to dismiss to add new grounds.  ECF No. 26.  Plaintiff opposed that motion.  *See* ECF Nos. 27 & 28.  Defendant explained that he wished to contend that Virginia law governed the parties' dispute and that Plaintiff had failed to state claims.  *See* ECF No. 26-1 at 2–6.  On top of his direct responses to that motion, Plaintiff also moved for a declaratory judgment establishing that one of the prior judgments between these litigants is "final and binding."  ECF No. 32 at 4.

While those motions were pending, the parties repeatedly requested sanctions.  Defendant kicked things off by seeking sanctions for what he calls Plaintiff's repetitive filing of meritless lawsuits and bar complaints "based upon the same nucleus of facts."  ECF No. 29 at 1–5 (providing Defendant's version of the parties' litigation history).  Plaintiff retaliated with a combined motion for sanctions and motion to strike a claim he contends is wrong.  ECF No. 35 (requesting, among other things, Defendant's disbarment).  Plaintiff next filed a similar (but longer) motion seeking the same relief.  ECF No. 36.  Plaintiff refiled that second motion a short time later.  ECF No. 38.

## II.    Legal Standard

To get past the pleading stage, Plaintiff's complaint must "contain sufficient factual matter . . . to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted).  A claim is plausible if "it contains factual allegations that, if proved, would allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Hurd v. District of Columbia*, 864 F.3d 671, 678 (D.C. Cir. 2017) (quotation omitted).  Again, the Court must "accept all the well-pleaded factual allegations of the complaint as true and draw all reasonable inferences from those allegations in the plaintiff's favor."  *Id.*

(quotation omitted).  But it must disregard "a legal conclusion couched as a factual allegation." *Cason v. NFL Players Ass'n*, 538 F. Supp. 3d 100, 109 (D.D.C. 2021) (quotation omitted).

The Court must keep in mind that Plaintiff is proceeding pro se.  Plaintiffs proceeding without counsel are "held to a less stringent standard" than other plaintiffs.  *Bickford v. United States*, 808 F. Supp. 2d 175, 179 (D.D.C. 2011).  But he still must plead facts that imply "more than the mere possibility of misconduct."  *Jones v. Horne*, 634 F.3d 588, 596 (D.C. Cir. 2011) (quotations omitted).  The Court must consider not only the facts in Plaintiff's complaint, but also those he presented in opposing Defendant's motions to dismiss.  *See Watson v. D.C. Water & Sewer Auth.*, 249 F. Supp. 3d 462, 464 (D.D.C. 2017); *Brown v. Whole Foods Mkt. Grp., Inc.*, 789 F.3d 146, 152 (D.C. Cir. 2015).  Although Defendant also represents himself, he is an attorney and so "is not entitled to the same level of solicitude."  *Lovitky v. Trump*, 308 F. Supp. 3d 250, 254 (D.D.C. 2018) (quotation omitted).

## III.  Analysis

Plaintiff brings four claims.  First, he says Defendant conspired with another lawyer to deprive Plaintiff of money and his right to arbitration when Defendant sued him in Virginia state court.  Compl. at 21–23.  Second, he argues Defendant abused the Virginia court process by filing and maintaining that suit because his purpose was to evade required arbitration.  Compl. at 23–24.  Third, he claims that suit constituted malicious prosecution.  Compl. at 24–25.  Fourth, he contends that Defendant's response to the online review invaded his privacy by portraying him in a false light.  Compl. at 25–26.

At the outset, the Court must decide whether to consider the grounds for dismissal presented in an exhibit to Defendant's motion to amend his second motion to dismiss, ECF No. 26-1.

Federal Rule of Civil Procedure 12(g)(2) generally limits parties to a single Rule 12 motion.[4]  So "the defense of failure to state a claim must be brought in . . . one motion to dismiss, or in an answer." *DSMC, Inc. v. Convera Corp.*, 273 F. Supp. 2d 14, 23 (D.D.C. 2002).  That rule, though, is subject to Rule 12(h)(2)(B), which also allows a party to assert failure to state a claim in a motion for judgment on the pleadings under Rule 12(c).  Such a motion can be "filed at any time, even after a previous motion to dismiss has been filed." *DSMC*, 273 F. Supp. 2d at 23.

For two reasons, the Court construes Defendant's motion to amend his motion to dismiss as a motion for judgment on the pleadings.  First, where the motion rests on the insufficiency of the complaint, rather than the truth of its allegations or some affirmative defense, the standards for reviewing motions under 12(b)(6) and those under 12(c) are "essentially the same." *Converdyn v. Moniz*, 185 F. Supp. 3d 148, 155 (D.D.C. 2016) (quotation omitted); *but see Murphy v. Dep't of the Air Force*, 326 F.R.D. 47, 48–50 (D.D.C. 2018) (explaining how the two standards differ where the movant "relies on both sets of pleadings").[5]  The Court "must accept the nonmovant's

---

[4] That is true only if the grounds for dismissal were "available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2).  Here—whether or not Defendant could be permitted to amend his second motion to dismiss, ECF No. 23—he already filed a Rule 12 motion to dismiss for lack of subject-matter jurisdiction, ECF No. 8.  The substantive allegations of Plaintiff's complaint have not changed, so there is no reason to think the grounds he now asserts were unavailable to him when he filed his first such motion.

[5] Rule 12(c) permits a motion only "[a]fter the pleadings are closed."  For that reason, *Murphy* describes the legal standard that applies to most Rule 12(c) motions.  But courts have recognized that a pre-answer motion treated as one for judgment on the pleadings makes it "as if [Defendant] had filed an answer admitting all of [Plaintiff's] factual allegations" and objecting to their legal sufficiency.  *Albers v. Bd. of Cnty. Comm'rs*, 771 F.3d 697, 703 (10th Cir. 2014).  This Court thus follows other courts' lead in construing a pre-answer-but-untimely Rule 12(b) motion as one for judgment on the pleadings and applying the shared elements of the legal standards. *See Depu v. Oath Holdings, Inc.*, 531 F. Supp. 3d 219, 236–37 (D.D.C. 2021); *Leighton v. Poltorak*, No. 17-CV-3120 (LAK), 2018 WL 2338789, at *1 (S.D.N.Y. May 23, 2018); *CNSP, Inc. v. Santa Fe*, No. 17-CV-355 (KJG), 2018 WL 813409, *1–2 (D.N.M. Feb. 9, 2018); *cf. also Ezra v. Bristol Myers Squibb Co.*, 784 F. App'x 48, 48–49 (2d Cir. 2019) (holding that the district court was

allegations as true," "view the facts in the light most favorable to the nonmovant," and ask whether the "movant is entitled to judgment as a matter of law." *Converdyn*, 185 F. Supp. 3d at 155. So, as a leading federal-courts treatise explains, "courts typically will construe . . . a late Rule 12(b) motion . . . as if it were brought under Rule 12(c)." 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1368 (3d ed.), Westlaw (database updated Apr. 2022).

Second, refusing to consider Defendant's arguments would create "unnecessary delay." *Depu*, 531 F. Supp. 3d at 236. If the Court were to do so, Defendant could answer the complaint and "refile the motion virtually without revision under Rule 12(c)." *Valdez v. Corizon, Inc.*, No. 2:11-CV-484 (PPS), 2014 WL 1874875, at *4 (N.D. Ind. May 8, 2014). But Plaintiff has already responded to the arguments Defendant asserts. *See generally* ECF No. 28. So, "in the interest of efficiency and judicial economy," the Court will not require a wasteful formality that ultimately would present "identical arguments." *Malone v. City of Peoria*, No. 12-CV-1257, 2014 WL 1052906, at *2 (C.D. Ill. Mar. 19, 2014). It will thus construe Defendant's Motion to Amend Motion to Dismiss, ECF No. 26, and its attachments as a motion for judgment on the pleadings under Rule 12(c). *See also, e.g.*, *Red Fort Cap., Inc. v. Guardhouse Prods. LLC*, 397 F. Supp. 3d 456, 466 (S.D.N.Y. 2019).[6]

---

"obliged to consider" an untimely Rule 12(c) motion where the defendants could not have timely asserted a 12(b) motion).

[6] Plaintiff also claims that Defendant's motion, insofar as it seeks to amend Defendant's prior motion, should be denied for violating the Court's standing order. *See* ECF No. 27. That order requires proposed amended pleadings to be "accompanied by a redline comparison of the original and amended or proposed pleading." ECF No. 2 ¶ 7. Defendant's proposed amended motion includes no redline comparison against the original motion. *See* ECF No. 26-1. Although the Court agrees with Plaintiff that its standing order is "to be read and obeyed, not callously ignored," ECF No. 27 at 3, Defendant did not violate the standing order because a motion is not a pleading. *See* Fed. R. Civ. P. 7(a) ("Only [the enumerated] pleadings are allowed . . . ."); Fed. R. Civ. P. 7(b) ("A request for a court order must be made by motion.").

The Court thus turns to the parties' dispute about the sufficiency of the complaint.

## A.   Virginia Law Applies to the Two Claims for Which the Law of the Jurisdictions Differs

The first point of contention is whether Virginia or District of Columbia law governs the dispute.  Defendant takes the former position, *see* ECF No. 26-1 at 3–4, and Plaintiff the latter, ECF No. 28 at 37.  To the extent the difference matters, the Court agrees with Defendant.

Federal courts sitting in diversity must apply the substantive law of the jurisdiction in which they sit.  *See generally Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78–79 (1938); *Hanna v. Plumer*, 380 U.S. 460, 465 (1965).  Choice-of-law rules are substantive, so a federal court sitting in diversity applies those of the forum jurisdiction.  *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941).  The task for this Court is to determine which jurisdiction's law a District of Columbia court would apply to this dispute.  *See, e.g.*, *Paxton v. Wash. Hosp. Ctr. Corp.*, 991 F. Supp. 2d 29, 31–34 (D.D.C. 2013).

The District of Columbia uses a choice-of-law scheme called modified-government-interest analysis.  *See Danziger v. Ford Motor Co.*, 402 F. Supp. 2d 236, 239 (D.D.C. 2005); *Washkoviak v. Student Loan Mktg. Ass'n*, 900 A.2d 168, 180 (D.C. 2006).  Like traditional government interest analysis, the method seeks to apply the law of the jurisdiction most interested in a particular issue.  *Compare Washkoviak*, 900 A.2d at 180, *with Babcock v. Jackson*, 12 N.Y.2d 473, 481–82 (1963) (explaining the basics of government-interest analysis).  But it also incorporates the core factors used by the choice-of-law approach of the Second Restatement of Conflicts of Law in tort cases.  *See Washkoviak*, 900 A.2d at 180; Restatement (Second) of Conflict of Laws § 145 (Am. L. Inst. 1971).

The approach has two steps.  First, the court decides whether the laws of the competing jurisdictions conflict.  *See Sloan v. Urb. Title Servs., Inc.*, 689 F. Supp. 2d 94, 105 (D.D.C. 2010).

If they do not, the inquiry ends, and the court applies District of Columbia law. *Id.* If they do—a situation called a "true conflict"—the court must proceed to the second step. *Krukas v. AARP, Inc.*, 376 F. Supp. 3d 1, 27 (D.D.C. 2019) (quotation omitted). There, the court "seeks to identify the jurisdiction with the most significant relationship to the dispute." *Id.* (quoting *Washkoviak*, 900 A.2d at 180). The jurisdiction most significantly related to the dispute is that whose "policy would be more advanced by the application of its law." *Washkoviak*, 900 A.2d at 180. Among the factors that illuminate that inquiry are "a) the place where the injury occurred; b) the place where the conduct causing the injury occurred; c) the domicile, residence, nationality, place of incorporation and place of business of the parties; and d) the place where the relationship is centered." *Id.* (quotation omitted).

The court must use that approach for each claim. Modified-government-interest-analysis seeks "the rule of law that can most appropriately be applied to govern the particular issue," a concept called dépeçage. *Stutsman v. Kaiser Found. Health Plan of Mid-Atlantic States, Inc.*, 546 A.2d 367, 373 (D.C. 1988) (quotation omitted). So "a different [jurisdiction's] law can apply to different issues." *Hartley v. Dombrowski*, 744 F. Supp. 2d 328, 336 (D.D.C. 2010).

### 1.    District of Columbia Law Applies to the Conspiracy Claim

Start with the conspiracy claim. Although Plaintiff does not plead a specific cause of action, it appears his first claim is for civil conspiracy to commit fraud. *See* Compl. at 15, 17–18, 21–23; ECF No. 28 at 13 n.10, 40, 44 (describing the civil suit Defendant filed via his attorney as "fraudulent"). The District of Columbia recognizes a common-law civil-conspiracy tort with four elements.[7] That tort "depends on the performance of some underlying tortious act," which is to

---

[7] "The elements of civil conspiracy are: (1) an agreement between two or more persons; (2) to participate in an unlawful act, or in a lawful act in an unlawful manner; and (3) an injury caused

say it is "a means for establishing vicarious liability for the underlying tort," not an "independent action." *Griva*, 637 A.2d at 848. Plaintiff's allegations of fraud appear to constitute his understanding of the underlying tort. *See, e.g.*, Compl. at 15 (alleging that Defendant's lawyer "filed the fraudulent, unmeritorious" Virginia state case); *id.* at 22 ("The conspiracy . . . is evidenced by [the] filing . . . [of] a fraudulent complaint . . . .").

Virginia law is materially the same. That jurisdiction recognizes a common-law civil-conspiracy tort with indistinguishable elements.[8] And like in the District of Columbia, civil conspiracy in Virginia is not an independent action; it requires "proof of the underlying tort." *Com. Bus. Sys., Inc. v. Halifax Corp.*, 484 S.E.2d 892, 896 (Va. 1997). Under either jurisdiction's law, then, Plaintiff's claim would depend on whether his allegations plausibly imply that Defendant and his lawyer agreed to commit fraud and that one of them fraudulently harmed Plaintiff while pursuing that scheme.

No true conflict exists where "the laws of the different jurisdictions are identical or would produce the identical result on the facts presented." *USA Waste of Md., Inc. v. Love*, 954 A.2d 1027, 1032 (D.C. 2008). Because that is true for Plaintiff's conspiracy claim, the Court will apply District of Columbia law. *Sloan*, 689 F. Supp. 2d at 105.

### 2. District of Columbia Law Applies to the Abuse-of-Process Claim

The story is the same for Plaintiff's second claim. Plaintiff cites a line of cases recognizing a common-law tort for abuse of process, Compl. at 18–19, and he alleges that Defendant and his

---

by an unlawful overt act performed by one of the parties to the agreement (4) pursuant to, and in furtherance of, the common scheme." *Griva v. Davison*, 637 A.2d 830, 848 (D.C. 1994).

[8] "A common law conspiracy consists of two or more persons combined to accomplish, by some concerted action, some criminal or unlawful purpose or some lawful purpose by a criminal or unlawful means." *Gelber v. Glock*, 800 S.E.2d 800, 820 (Va. 2017) (quotation omitted).

lawyer filed the Virginia state-court case to evade arbitration and deprive Plaintiff of the rights to arbitrate or litigate his claim to the retainer he paid Defendant, Compl. at 23–24.  The District of Columbia recognizes an abuse-of-process tort "where the legal system has been used to accomplish some end which is without the regular purview of the process, or which compels the party against whom it is used to do some collateral thing which he could not legally and regularly be required to do." *Bown v. Hamilton*, 601 A.2d 1074, 1079 (D.C. 1992) (quotation omitted).  A court in this district has recognized two elements to that tort: "(1) the existence of an ulterior motive; and (2) an act in the use of process other than such as would be proper in the regular prosecution of the charge." *Thorp v. District of Columbia*, 319 F. Supp. 3d 1, 6 (D.D.C. 2018) (quoting *Hall v. Hollywood Credit Clothing Co.*, 147 A.2d 866, 868 (D.C. 1959)).

Again, Virginia law is the same.  Virginia recognizes a tort by the same name for "the misuse of a legal process to accomplish some purpose not warranted or commanded by the writ, a malicious perversion of a regularly issued . . . process for a purpose and to obtain a result not lawfully warranted or properly attainable thereby." *Eubank v. Thomas*, 861 S.E.2d 397, 403 (Va. 2021) (quotation omitted).  That tort has the same two elements: "(1) the existence of an ulterior purpose; and (2) an act in the use of the process not proper in the regular prosecution of the proceedings." *Id.* (quotation omitted).

So there is no true conflict here either, and the Court will apply District of Columbia law. *Sloan*, 689 F. Supp. 2d at 105.

### 3.    Virginia Law Applies to the Malicious-Prosecution Claim

Divergence between the law of the two jurisdictions begins with Plaintiff's third claim. There, Plaintiff cites a line of cases recognizing a common-law malicious-prosecution claim, Compl. at 19–20, and alleges that Defendant caused him special harm by filing the Virginia state-court suit without "probable cause," Compl. at 24–25.  The District of Columbia recognizes a

malicious-prosecution tort with four elements.[9]  One of those elements—"special injury"—bears

on this inquiry.  *See Nader*, 567 F.3d at 697.  This Circuit has long recognized that, "as a matter

of District of Columbia law, repetitious malicious actions may satisfy this element."  *Id.* (citing

*Soffos v. Eaton*, 152 F.2d 682, 683 (D.C. Cir. 1945)).  That version of special injury is salient here

because Plaintiff alleges that Defendant sued him more than once.  *See* Compl. at 69–70; ECF

No. 28 at 27.

Virginia, however, has not recognized that form of special injury.  The Virginia Supreme

Court has explained that malicious-prosecution actions arising from underlying civil suits are sub-

ject to "a more stringent rule . . . than in actions arising from criminal cases."  *Ayyildiz v. Kidd*,

266 S.E.2d 108, 111 (Va. 1980).  It referred to special injury in a "restricted sense," which requires

the defendant to have intentionally, in the underlying action, caused the plaintiff "special grievance

or damage," something "superadded" by his "malice and contrivance" beyond "ordinary expenses"

or anything else "necessarily incident to a defense."  *Id.* at 112 (quotation omitted).  Anxiety,

mental anguish, reputational harms, and litigation costs are not special injuries.  *See Ely v. Whit-

lock*, 385 S.E.2d 893, 896 (Va. 1989); *Nelson v. Green*, 965 F. Supp. 2d 732, 752 (W.D. Va. 2013).

Given how strictly Virginia courts have interpreted the special-injury requirement, and without

any case applying Virginia law that accepts repetitive suits as a per se special injury, the Court

concludes that malicious-prosecution claims have materially different requirements in Virginia

than they do in the District of Columbia.

---

[9] Malicious prosecution based on an underlying civil suit requires: "(1) that the underlying suit
terminated in plaintiff's favor; (2) malice on the part of the defendant; (3) lack of probable cause
for the underlying suit; and (4) special injury occasioned by the plaintiff as the result of the original
action."  *Nader v. Democratic Nat'l Comm.*, 567 F.3d 692, 697 (D.C. Cir. 2009) (quoting *Morowitz
v. Marvel*, 423 A.2d 196, 198 (D.C. 1980)).

So there is a true conflict between Virginia and District of Columbia law. The pleading requirements of the applicable torts are different and "would result in different outcomes." *Margolis v. U-Haul Int'l, Inc.*, 818 F. Supp. 2d 91, 101 (D.D.C. 2011). The Court therefore must proceed to the second step of the analysis and ask which jurisdiction has a more significant relationship to this dispute. *See Washkoviak*, 900 A.2d at 180

Virginia has a "more substantial interest" in this claim. *See Adams v. Martinsville Dupont Credit Union*, 573 F. Supp. 2d 103, 110 (D.D.C. 2008). Nearly all of the Second Restatement factors weigh in that direction.[10] Plaintiff lived in Virginia when Defendant sued him, so the injury occurred there. *See* Compl. at 35; ECF No. 29-5 at 4. So too for the conduct that caused the injury because Defendant sued Plaintiff in a Virginia court. Compl. at 22. Plaintiff was domiciled in Virginia, *see* Compl. at 35; ECF No. 29-5 at 4, and Defendant's law office was there too, Compl. at 24. Because Plaintiff was a Virginia domiciliary who retained a Virginia-based lawyer, the parties' relationship was centered in Virginia, even though Defendant had originally represented Plaintiff in a case in the District of Columbia. *See Pietrangelo v. Wilmer Cutler Pickering Hale & Dorr, LLP*, 68 A.3d 697, 715 (D.C. 2013) (holding that an attorney-client relationship formed with a law firm in the District of Columbia was "centered" there even though a case was "filed" in another jurisdiction). The only fact that points in the other direction is that Defendant is domiciled in the District of Columbia. Compl. at 2. But this case arises from a dispute over his professional activities, so that fact is less important.

---

[10] Recall that those factors are "a) the place where the injury occurred; b) the place where the conduct causing the injury occurred; c) the domicile, residence, nationality, place of incorporation and place of business of the parties; and d) the place where the relationship is centered." *Washkoviak*, 900 A.2d at 180 (quotation omitted).

Because Plaintiff challenges Defendant's conduct in Virginia relating to a dispute over the fees owed to his Virginia-based law firm, and because states have an "especially great" interest in "regulating lawyers" who practice "within their boundaries," *cf. Goldfarb v. Va. State Bar*, 421 U.S. 773, 792 (1975), the Court will apply Virginia law to this claim.

### 4.    Virginia Law Applies to the False-Light-Invasion-of-Privacy Claim

The difference between the jurisdictions' laws is much starker for Plaintiff's final claim. Plaintiff cites a line of cases about a common-law invasion-of-privacy tort, Compl. at 20, and explains that Defendant's claims that he authored the online review and has a psyche resembling that of Charles Manson were false and would be highly offensive to a reasonable person, *id.* at 25–27.  The District of Columbia recognizes a tort for "invasion of privacy—false light." *Kitt v. Cap. Concerts, Inc.*, 742 A.2d 856, 859 (1999).[11]

Virginia, though, does not.  "[F]alse light is not an actionable tort in Virginia." *Aitken v. Commc'ns Workers of Am.*, 496 F. Supp. 2d 653, 656 n.1 (E.D. Va. 2007).  The Virginia Supreme Court has held that the Virginia General Assembly has "limited the application of the common law privacy torts by statute." *WJLA-TV v. Levin*, 564 S.E.2d 383, 395 (Va. 2002).  So, under Virginia law, "a plaintiff [who] alleges that the defendant made an unauthorized use of the plaintiff's name . . . in a context that is false and would be highly offensive to a reasonable person [must allege] that the context was defamatory," not merely a "misappropriation." *Id.* at 394 n.5.

Because one jurisdiction recognizes the cause of action Plaintiff asserts, and the other does not, "it is axiomatic that a true conflict of law exists." *Adams*, 573 F. Supp. 2d at 110.  On to the second step.

---

[11] The elements are "1) publicity 2) about a false statement, representation or imputation 3) understood to be of and concerning the plaintiff, and 4) which places the plaintiff in a false light that would be offensive to a reasonable person." *Kitt*, 742 A.2d at 859.

Some facts relevant to the jurisdictions' interests in this claim are different, but the bottom line is the same.  The allegations relevant to this claim concern conduct that happened several years after those relevant to the third claim.  *See* Compl. at 112.  Although Plaintiff does not explain when he moved from Virginia to Florida, perhaps he became a Florida domiciliary before Defendant named him in responding to the online review.  *See* Compl. at 1; ECF No. 22 at 8.  It is also possible that Defendant posted his response from his home in the District of Columbia, rather than his Virginia office.  Because this case is at the pleading stage and Plaintiff represents himself pro se, the Court will draw those inferences in his favor.  So two of the Second Restatement factors—the place where the conduct causing the injury occurred and the domicile of the parties—may not appear to suggest that Virginia law should apply.[12]

But of those factors, only the location of Defendant's conduct favors the *District of Columbia* as compared to Virginia.  And the fact, even if true, that Defendant posted his response from the District of Columbia provides little reason to think that jurisdiction's "policy would be most advanced by application of its law."  *Long v. Sears Roebuck & Co*, 877 F. Supp. 8, 11 n.1 (D.D.C. 1995).  Whatever the precise contours of the policy behind the District's recognition of a false-light-invasion-of-privacy tort, it almost certainly does not include *subjecting* its citizens—like Defendant—to liability to non-citizens—like Plaintiff—rather than *protecting* its citizens from the reverse scenario.  As another court in this district has explained, the policy behind "the District's adoption of the false light tort" "will not be advanced" by applying the District's law to

---

[12] No party contends that Florida law governs this claim.  So the Court does not consider that possibility.  Parties may forfeit or waive choice-of-law issues because those "do not go to the court's jurisdiction."  *Williams v. BASF Catalysts LLC*, 765 F.3d 306, 316 (3d Cir. 2014); *see also Perry Cap. LLC v. Mnuchin*, 864 F.3d 591, 626 n.24 (D.C. Cir. 2017) (declining to adopt "a standard for forfeiture or waiver particular to choice of law").

benefit someone domiciled elsewhere. *Pearce v. E.F. Hutton Grp., Inc.*, 664 F. Supp. 1490, 1497 (D.D.C. 1987).

Virginia, by contrast, retains a strong interest in the dispute. For the reasons already explained, the parties' relationship was and is centered there—where Plaintiff lived during his attorney-client relationship with Defendant. And Defendant's response noted that Plaintiff was a "former client" of his Virginia-based law firm in responding to a review of that firm. Compl. at 112. So the centrality of Virginia to the parties' dispute and that jurisdiction's strong interests in its former domiciliary's rights and in regulating the conduct of a lawyer who maintains an office there create powerful connections to the policies behind Virginia's tort law. For those reasons, and because Plaintiff does not live—and has never lived, so far as the Court knows—in the District of Columbia, Virginia "has the more significant relationship to this dispute and a greater interest in the controversy." *Pietrangelo*, 68 A.3d at 715. The Court will thus apply Virginia law to Plaintiff's fourth claim.

### B.      Plaintiff Has Not Stated a Claim

Armed with law to apply to each of Plaintiff's claims, the Court turns to the sufficiency of his allegations. The question is whether Plaintiff has given the court enough "factual matter" to "infer more than the mere possibility of misconduct." *Caldwell v. Obama*, 6 F. Supp. 3d 31, 42 (D.D.C. 2013) (quotation omitted). The answer, for all four claims, is no.

### 1.      Plaintiff's Allegations of a Conspiracy Fail to State an Underlying Fraud Claim

In the District of Columbia, a civil-conspiracy tort is not an "independent action," but a "means for establishing vicarious liability for an underlying tort." *Doe v. Roman Catholic Diocese of Greensburg*, 581 F. Supp. 3d 176, 211 (D.D.C. 2022). In other words, this claim is a mechanism for holding Defendant responsible for the tortious conduct of his attorney. *See* Compl. at 22

(alleging that Defendant's attorney filed allegedly fraudulent documents).  The underlying claim here appears to be fraud.  *See id.* at 22–23 (describing those filings as "fraudulent," "fals[e]," and as containing a "lie").  So Plaintiff must "allege an event, conversation, or document showing that there was an agreement among" Defendant and his lawyer.  *Geier v. Conway, Homer & Chin-Caplan, P.C.*, 983 F. Supp. 2d 22, 42 (D.D.C. 2013).  And he must "'state with particularity' the circumstances constituting the alleged fraud," which here is the "unlawful act" required to state a civil conspiracy claim.  *Id.* (quoting Fed. R. Civ. P. 9(b) and *Exec. Sandwich Shoppe, Inc. v. Carr Realty Corp.*, 749 A.2d 724, 738 (D.C. 2000)).

Plaintiff has pleaded enough facts to infer an agreement between Defendant and his lawyer.  Circumstantial evidence of a tacit agreement is enough to survive a motion to dismiss.  *See Doe*, 581 F. Supp. 3d at 213 (citing *Halberstam v. Welch*, 705 F.2d 472, 477 (D.C. Cir. 1983)).  And it is reasonable to infer from the fact that Defendant hired his lawyer to sue Plaintiff that the two had at least a tacit agreement about the litigation strategy.

But Plaintiff has not stated an underlying fraud claim.  In the District of Columbia, common-law fraud requires "(1) a false representation (2) in reference to material fact, (3) made with knowledge of its falsity, (4) with the intent to deceive, and [that] (5) action is taken in reliance upon the representation."  *Atraqchi v. GUMC Unified Billing Servs.*, 788 A.2d 559, 563 (D.C. 2002) (quotation omitted).  Plaintiff's allegations do not satisfy those elements.

Plaintiff relies on the following allegedly false statements: that Defendant's lawyer told the Virginia court that Plaintiff "failed to pay sums due" and that Defendant "never agreed to arbitrate his fee dispute with" Plaintiff.  Compl. at 22.  But the District of Columbia has "long recognized an absolute privilege for statements made [during] a judicial proceeding, so long as the statements bear some relation to the proceeding."  *Finkelstein, Thompson & Loughran v. Hemispherx*

17

*Biopharma, Inc.*, 774 A.2d 332, 338 (D.C. 2001), *overruled on other grounds*, *McNair Builders, Inc. v. Taylor*, 3 A.3d 1132 (D.C. 2010).  That doctrine is "a complete bar to the claim[ ] of fraud" arising from statements made during a prior judicial proceeding.  *McNair*, 3 A.3d at 1136; *see also Robertson v. Cartinhour*, 867 F. Supp. 2d 37, 52–53 (D.D.C. 2012) (holding that, under District of Columbia law, attorneys' "alleged misrepresentations during [prior litigation] . . . cannot be a basis for suit" and dismissing a fraud claim).  So even if the alleged statements could otherwise qualify as fraud, they still would not be cognizable under these circumstances.[13]

Anyway, Plaintiff does not allege that *he* relied on those statements, believing them to be true.  Quite the opposite.  He alleges that he requested an arbitration against Defendant, *see* Compl. at 43, told Defendant that he was bound to arbitrate the dispute, ECF No. 15-1 at 6, and then spent years contesting Defendant's claims in multiple courts, *see* Compl. at 9–12.  But a fraud claim in the District of Columbia requires that the "*plaintiff* justifiably and detrimentally relied" on the alleged misrepresentation.  *Pyles v. HSBC Bank USA, N.A.*, 172 A.3d 903, 907 (D.C. 2017) (emphasis added).  The lack of even an inkling that Plaintiff detrimentally relied on these statements is another defect in his fraud claim.

---

[13] Even if that were not so, Plaintiff also alleges no statement of material fact.  Again, he complains that Defendant's lawyer told the Virginia court that Plaintiff "failed to pay sums due" and that Defendant "never agreed to arbitrate his fee dispute with" Plaintiff.  Compl. at 22.  Those statements are legal conclusions without any inherent truth value.  Whether a sum is "due" and whether discussions constitute an "agreement" are questions that require the application of law to underlying facts.  That is why courts produce judicial opinions and not merely factfindings.  And an "expression of opinion" is not a material statement of fact under District of Columbia law.  *See Howard v. Riggs Nat'l Bank*, 432 A.2d 701, 706 (D.C. 1981).  And even if Defendant and his lawyer did not believe those legal conclusions correct, as Plaintiff alleges, see Compl. at 22–23; ECF No. 28 at 4, that does not imbue the statements with any more objective truth value.

For those reasons, Plaintiff has not pleaded facts that constitute fraud, even setting aside the heightened pleading standard of Rule 9(b). His civil-conspiracy claim, which depends on an underlying fraud, must therefore be dismissed. *See Geier*, 983 F. Supp. 2d at 42.

### 2.     Plaintiff Has Not Stated an Abuse-of-Process Claim Because He Has Not Alleged a Collateral Abusive Act

Plaintiff's second claim is that Defendant abused process in his conduct related to the Virginia litigation. *See* Compl. at 23–24. He explains that Defendant knew he was supposed to arbitrate his claim when he filed it and that he "filed and maintained [it] for the improper purposes of" avoiding arbitration and preventing Plaintiff from seeking other relief. ECF No. 28 at 47. Plaintiff also explains that Defendant was "largely successful" in achieving those aims because the parties contested the arbitrability of their dispute for "over five years." *See id.* at 47–48. That delay, he says, took him "far outside the 3 year statute of limitations." *Id.* at 48 n.24.

In the District of Columbia, an abuse-of-process claim requires that "process was used to accomplish an end unintended by law, and [that it] was instituted to achieve a result not regularly or legally obtainable." *Morowitz*, 423 A.2d at 198. As the Court has already explained, courts have identified two elements to that claim: "1) the existence of an ulterior motive; and (2) an act in the use of process other than such as would be proper in the regular prosecution of the charge." *Thorp*, 319 F. Supp. 3d at 22 (quoting *Hall*, 147 A.2d at 868) (emphasis deleted). The D.C. Court of Appeals has also explained that the second element requires not just an act but the "achievement of some [unlawful] end." *Morowitz*, 423 A.2d at 198 (quotation omitted).

No doubt, Plaintiff alleges that Defendant filed suit in bad faith. But that fact is irrelevant to an abuse-of-process claim. "The filing of the lawsuit is insufficient because . . . 'mere issuance of process is not actionable, no matter what ulterior motive may have prompted it; the gist of the action [lies] in the improper use *after* issuance.'" *Rockwell Cap. Partners, Inc. v. CD Int'l Enters.,*

*Inc.*, 311 F. Supp. 3d 52, 55 (D.D.C. 2018) (quoting *Morowitz*, 423 A.2d at 198) (alterations adopted).  So Plaintiff's allegations are relevant only to the extent that they establish what Defendant did during the litigation.

On that score, Plaintiff alleges very little.  He explains only that Defendant "maintained" the action for unlawful purposes, and that he "fraudulently opposed" Plaintiff's "10 motions to stay for arbitration."  ECF No. 28 at 48.  Even assuming, because Plaintiff proceeds pro se, that those allegations are sufficient to imply that Defendant vexatiously opposed relief to which he believed Plaintiff was entitled, thus causing significant litigation delays, that would not be enough to state a claim.  Expense, inconvenience, and delay are "the unhappy incident of almost any litigation and are an insufficient basis for an abuse of process claim."  *Bannum, Inc. v. Citizens for a Safe Ward Five, Inc.*, 383 F. Supp. 2d 32, 47 (D.D.C. 2005).  What is needed is something "collateral" that Plaintiff "could not legally and regularly be compelled to do."  *Id.* (quoting *Jacobson v. Thrifty Paper Boxes, Inc.*, 230 A.2d 710, 711 (D.C. 1967)).  "Such acts usually involve 'some form of extortion.'"  *Rockwell*, 311 F. Supp. 3d at 55 (quoting *Scott v. District of Columbia*, 101 F.3d 748, 755 (D.C. Cir. 1996)).

Plaintiff does not hint at anything like that.  At most, he alleges that Defendant repeatedly and knowingly asserted a meritless legal position.  But Plaintiff can legally and regularly be called—as legions of litigants are—to answer dubious contentions in court.  Any other conclusion would risk disrupting litigants' "unfettered access" to courts and could have a "chilling and inhibitory effect on would-be litigants of justiciable issues."  *Morowitz*, 423 A.2d at 197–98.  Under the "restrictive view" of abuse-of-process claims taken by courts in this jurisdiction applying District of Columbia law, Plaintiff's allegations do not state a claim, so the Court will dismiss his second count.  *See Rockwell*, 311 F. Supp. 3d at 55–56.

### 3.     Plaintiff Has Not Alleged an Injury that Can Sustain a Civil-Malicious-Prosecution Claim under Virginia Law

Plaintiff's third claim fails for essentially the same reason.  That claim, for malicious prosecution, also arises from Defendant's filing of the Virginia suit.  *See* Compl. at 24–25; ECF No. 28 at 34–35, 38–45.  Here, Plaintiff explains that Defendant sued him "without probable cause," that the case terminated in Plaintiff's "favor," and that he suffered harm.  Compl. at 24–25.  He also says Defendant "seized" his property by keeping the retainer, ECF No. 28 at 39–42, and that Defendant further injured him by filing more than one suit, *id.* at 43–45.

In Virginia, a malicious-civil-prosecution claim has five elements: (1) the defendant maliciously (2) sued the plaintiff (3) without probable cause, (4) the matter terminated "in a manner not unfavorable" to the plaintiff, but (5) the suit caused harm via a special injury or an "unusual hardship."  *See Nelson*, 965 F. Supp. 2d at 751 (quoting *O'Connor v. Tice*, 704 S.E.2d 572, 575 (Va. 2011), and *Ayyildiz*, 266 S.E.2d at 111).  Unlike an abuse-of-process claim, malicious prosecution is about the filing of litigation, not conduct during it.  *See Glidewell v. Murray-Lacy & Co.*, 98 S.E. 665, 667 (Va. 1919).  The elements of malice and probable cause are highly related because "when the defendant acts in good faith upon the advice of reputable counsel, after a full disclosure of all material facts, he has probable cause to support his action."  *Ayyildiz*, 266 S.E.2d at 110.  Both elements may thus be inferred from allegations that the defendant made claims he thought were "false," "unreliable," or "unfounded."  *See Nelson*, 965 F. Supp. 2d at 751.

As the Court has already explained, the harm requirement is stringent.  The Virginia Supreme Court held in *Ayyildiz* that arrest, seizure of property, or other "special injury" are qualifying harms.  266 S.E.2d at 111.  It then explained that a special injury cannot be one "common to all" suits of that type.  *Id.* at 112.  Special in this sense means something not "faced by most individuals forced to defend themselves," something more than the "secondary consequences associated" with

civil litigation. *Nelson*, 965 F. Supp. 2d at 752. Courts must keep "in mind" the "policy reasons"—much like those relevant to abuse-of-process claims—for "limiting" the construction of special injury. *See Ely*, 385 S.E.2d at 675.

Plaintiff first seeks to avoid the special-injury inquiry by pointing out that Defendant kept his retainer, which he calls a "seizure." ECF No. 28 at 39–42. Plaintiff "advanced" Defendant that money while Defendant represented him, but he says Defendant should have "refund[ed]" that money after the suit concluded. Compl. at 6–7. He also notes that Defendant's Virginia suit prevented him from arbitrating a dispute over those funds, so he never got them back. Compl. at 23; ECF No. 28 at 40–41.

Those allegations do not describe a qualifying seizure. For one thing, it is unlikely that retaining property one already possesses could ever be a "seizure"—a word that refers to "*taking* possession of . . . property." *Seizure*, *Black's Law Dictionary* (11th ed. 2019) (emphasis added). For another, it is unclear that a private person can unilaterally "seize" anything because the word usually connotes doing so "by legal right or process." *Id.*[14] But even if Defendant's refusal to refund the retainer were a seizure, Plaintiff does not allege that it *arose* from the civil suit. *See Ely*, 385 S.E.2d at 895 (explaining that qualifying harms are those "arising out of prior civil actions"). Instead, he says Defendant announced he would keep the money two days before he filed suit. Compl. at 6–8. And even if the civil suit extinguished his claim to the funds by depleting the time allowed by the statute of limitations—although he does not explain why he could not simply have counterclaimed—that is not a seizure either. "The delays and uncertainty occasioned by litigation do not directly transfer any property rights or possession and, anyway, are such "common

---

[14] For an example of a related, ordinary use of this term, a federal malicious-prosecution claim under 42 U.S.C. § 1983 requires that a person was seized "pursuant to legal process." *See Thompson v. Clark*, 142 S. Ct. 1332, 1337 (2022).

consequences" of prior litigation that accepting them as a seizure would nullify that element of the claim. *Cf. Tibbets v. Yale Corp.*, 47 F. App'x 648, 653 (4th Cir. 2002) (rejecting a plaintiff's claim that a bankruptcy proceeding had "seized" his "property right in [a] lawsuit").

At bottom, Defendant's refusal to refund Plaintiff's retainer—even if that arose from the lawsuit and even if it were unlawful—is an injury "common to" all comparable actions. *Ayyildiz*, 266 S.E.2d at 112. Anyone who is sued for failing to pay his lawyer "sums due," Compl. at 8, should expect as a "natural consequence" that his attorney will not refund him money already paid. *See Ely*, 385 S.E.2d at 675. He should also expect expense and delay. *See Ayyildiz*, 266 S.E. 2d at 111. Those are, at most, "secondary consequences associated" with civil litigation. *Nelson*, 965 F. Supp. 2d at 752.

Plaintiff also points out that Defendant sued him more than once over allegations "covering the same dispute." ECF No. 28 at 45. But as the Court has already explained, repetitive filings do not per se inflict special injury under Virginia law. Even assuming that duplicative litigation could ever qualify without some identified consequence, such a suit would at least need to "relitigate substantive issues that had already been decided," rather than attempting to "address separate and distinct issues." *See* 52 Am. Jur. 2d *Malicious Prosecution* § 80, Westlaw (database updated Feb. 2023). Here, Plaintiff's allegations describe the supposedly repetitive claims made by Defendant in another filing. *See* Compl. at 11–12; ECF No. 28-1 at 18–39. Those claims were for defamation regarding statements Plaintiff allegedly made about Defendant in online reviews years later, *see* ECF No. 28-1 at 19–22, not anything to do with Plaintiff's failure to pay "sums due," Compl. at 8. Thus, Plaintiff has not plausibly alleged that Defendant filed litigation raising "issues that had already been decided." *See* 52 Am. Jur. 2d § 80.

For those reasons, Plaintiff has alleged neither a special injury nor unusual hardship arising from the Virginia suit.  So his malicious-prosecution claim must be dismissed.  *Nelson*, 965 F. Supp. 2d at 752.

### 4.    Virginia Does Not Recognize a False-Light-Invasion-of-Privacy Tort

Plaintiff's final claim is that Defendant invaded his privacy by falsely accusing him of posting the review under the name "Alan R." and comparing him to Charles Manson.  Compl. at 25–27.  That accusation, he says, created publicity about him in a way that would be "highly offensive to a reasonable person."  *See* ECF No. 28 at 49–55.

Those allegations do not state a claim because, as the Court has already explained, Virginia "simply do[es] not recognize such a common law cause of action."  *Falwell v. Penthouse Int'l*, 521 F. Supp. 1204, 1206 (W.D. Va. 1981).  So the Court must dismiss that claim.  *See, e.g.*, *Hourani v. Psybersolutions LLC*, 164 F. Supp. 3d 128, 144 (D.D.C. 2016); *Hayes v. KIK Custom Prods.*, No. 7:11-CV-200, 2011 WL 4963774, at *2 (W.D. Va. Oct. 14, 2011).

\*          \*          \*

None of Plaintiff's claims can survive Defendant's motion for judgment on the pleadings. That conclusion terminates the merits of this case, including by mooting Plaintiff's pending Motion for a Declaratory Judgment, ECF No. 32.  But it does not decide the parties' pending motions for sanctions, ECF Nos. 29, 35, 36, 38.  Each of those motions depends on proposed findings of fact, such as the truth or falsity of the parties' allegations and the merits or lack thereof of their earlier legal contests.  *See generally* ECF Nos. 29, 35, 36, 38.  The Court cannot, however, make any of these findings of fact on this record.  It has resolved this case on the grounds that Plaintiff's allegations fail to state a claim.  The Court will thus deny the motions for sanctions.

**IV.      Conclusion**

For all the above reasons, the Court will construe Defendant's Motion to Dismiss, ECF No. 23, and Motion to Amend Motion to Dismiss, ECF No. 26, and the attachments thereto as a motion for judgment on the pleadings, grant the motion, and enter judgment for Defendant.  The Court will deny the remaining pending motions.  A separate order will issue.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: February 28, 2023